IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

CHRISTINE M. PRANDY,                )
                                    )
            Plaintiff,              )
                                    )
v.                                  )        Case No. CIV-11-930-F
                                    )
MICHAEL J. ASTRUE,                  )
COMMISSIONER OF THE SOCIAL          )
SECURITY ADMINISTRATION,            )
                                    )
            Defendant.              )

## REPORT AND RECOMMENDATION

Ms. Christine M. Prandy seeks judicial review of a denial of insurance benefits by the Social Security Administration.  According to Ms. Prandy, the record was inadequately developed and selectively discussed.  The Court should reject these arguments and affirm the administrative decision.

## I.      THE ADMINISTRATIVE LAW JUDGE'S DECISION

The administrative law judge followed the sequential process required by agency regulations.  *See* 20 C.F.R. § 404.1520(a)(4).  In doing so, the judge determined at the first step that Ms. Prandy had not engaged in substantial gainful activity since the protective filing date. R. at p. 13.  At step two, the judge determined that Ms. Prandy had severe impairments involving osteoarthritis, diabetes mellitus, hypertension, and obesity.  *Id*.  At step three, the administrative law judge found that Ms. Prandy's impairments did not meet or equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at p. 15.  The

administrative law judge proceeded to the fourth step and determined that: (1) Ms. Prandy could perform light work with no postural limitations, and (2) she could not perform her past relevant work. *Id.* at pp. 17, 20. The administrative law judge ultimately concluded at step five that the Plaintiff was not disabled because she could perform light unskilled jobs existing in significant numbers in the national economy. *Id.* at p. 21.

II.     STANDARD OF REVIEW

The Court's task is to determine whether: (1) the factual findings were supported by substantial evidence, and (2) the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009).

III.    THE PLAINTIFF'S ARGUMENTS

Ms. Prandy alleges that:

- the administrative law judge had failed to properly develop the record on mental impairments;

- the judge had ignored much of the medical evidence related to Ms. Prandy's left knee and left shoulder problems; and

- the findings on residual functional capacity were not based on substantial evidence because the administrative law judge had not adequately addressed impairments involving the left knee or left shoulder.

Plaintiff's Opening Brief at pp. 5-15 (Dec. 6, 2011) ("Plaintiff's Brief").

IV.     DEVELOPMENT OF THE RECORD

In part, Ms. Prandy alleges error through a failure to order a psychological examination or IQ test. *Id.* at p. 7. According to Ms. Prandy, the record suggested a

reasonable possibility of a severe impairment involving low intelligence and related mental limitations. *Id.*

Because disability hearings are nonadversarial, the agency must ensure development of an adequate record on the issues raised. *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007). But the agency's duty to develop the record is based on the claimant's presentation of enough evidence to "suggest a reasonable possibility" of "a severe impairment." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997).

Ms. Prandy did not submit evidence that would have suggested a reasonable possibility of a severe impairment involving low intelligence. She testified that she had attended "special education" classes in high school and had experienced difficulty with mathematics and reading. R. at pp. 31-32. And she attended remedial classes in high school. *Id.* at p. 191.

Despite the Plaintiff's enrollment in classes for remedial and special education, there is little in the administrative record to suggest impairment of her ability to perform substantial gainful activity based on a low intelligence. Ms. Prandy ultimately graduated in the top half of her high school class. *Id.* When asked why she did not think she could work, Ms. Prandy mentioned only physical complaints without any reference to a low intelligence level. *Id.* at pp. 35-39. A mental status examination reflected an ability to multiply by three and normal thought processes, thought content, memory, and speech. *Id.* at p. 333. And an agency official interviewed Ms. Prandy and commented that she had no difficulty in

understanding, coherency, or concentration.  *Id*. at p. 138.  In her application, Ms. Prandy also acknowledged that she could pay attention for a substantial period of time and was able to follow verbal instructions "[v]ery well." *Id*. at p. 145.  Together, the evidence could have led the administrative law judge to conclude that there was not a reasonable possibility of a severe impairment of intellectual processes.

The Tenth Circuit Court of Appeals addressed a similar issue in *Sneed v. Barnhart*, 88 Fed. Appx. 297 (10th Cir. Jan. 30, 2004) (unpublished op.).  There too the claimant alleged that the administrative law judge had inadequately developed the record by failing to order a consultative examination for I.Q. testing.  *See Sneed v. Barnhart*, 88 Fed. Appx. at 299.  A psychologist said that the claimant could have had a learning disability, had low-average intelligence, could not understand proverbs, could not count by threes, could not repeat six and seven digits forward, and had difficulties in counting change.  *See id*. at 300. Two other doctors suspected mild retardation and below-average I.Q.  *See id*.  And still another doctor reported that the claimant was mentally slow as a result of a brain injury incurred during childhood.  *See id*.  But to the appeals court, these references to the possibility of a low I.Q. did not trigger the administrative law judge's duty to order intelligence testing.[1]

---

[1]      *Sneed v. Barnhart*, 88 Fed. Appx. at 300-301; *accord Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989) (*per curiam*) ("When there is no contention that a claimant is mentally retarded, a few instances in the record noting diminished intelligence do not require that the [administrative law judge] order an I.Q. test in order to discharge his duty to fully and fairly develop the record." (citations omitted)).

*Sneed v. Barnhart* is persuasive because of the similarity in facts and strength of the court's reasoning. The isolated references here are arguably less significant than they had been in *Sneed*. When asked by the judge why she could not work, Ms. Prandy did not refer to a low intelligence. *See supra* p. 3. Similarly, the medical evaluations reflected normal thought processes. *See supra* pp. 3-4. Unlike the administrative record in *Sneed*, the evidence here does not contain any professional assessments of low intelligence. Against this backdrop, the isolated references to Ms. Prandy's difficulties with language, mathematics, and high school courses do not suggest a reasonable possibility of a severe impairment involving low intelligence. Thus, the Court should follow *Sneed v. Barnhart* and conclude that the administrative law judge had no duty to order a consultative test involving Ms. Prandy's I.Q. or intelligence.

V.    SELECTIVITY IN THE DISCUSSION OF EVIDENCE AND EVIDENTIARY SUPPORT FOR THE ASSESSMENT OF RESIDUAL FUNCTIONAL CAPACITY

The second and third claims are related. *See supra* p. 2. Ms. Prandy urges legal error from the administrative law judge's failure to consider all of the significantly probative evidence of left shoulder and left knee impairments. Plaintiff's Brief at pp. 11-13. According to Ms. Prandy, this omission resulted in an unsupported assessment of residual functional capacity. *Id.* at pp. 13-15. The Court should reject both arguments.

The Plaintiff contends that the administrative law judge had selectively discussed the evidence. This contention largely rests on Ms. Prandy's apparent medical conclusions that the ability to stand, walk, and reach could be substantially affected by the medical evidence

5

involving tenderness to palpation of the shoulder, mild wasting of the deltoid muscle, fair range of motion in the shoulder, MRI findings relating to the distal spraspinatus tendon, collection of fluid in the subacromial bursa, swelling and effusion in the knee, crepitus and movement of both patellas, subnormal flexion in the knee, abduction and reduced forward elevation of the shoulder, and limpness.  Plaintiff's Brief at pp. 11-12, 14.  This argument is not persuasive.

The medical evidence relied upon by the Plaintiff would only have merited discussion if it was significantly probative on the judge's assessment of residual functional capacity. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).

The medical evidence relied upon by Ms. Prandy did not appear to be significantly probative to Dr. J. Marks-Snelling, who had reviewed the data and concluded that the Plaintiff could perform light work without any reaching limitations.   R. at pp. 334-41. Indeed, in reaching this conclusion, Dr. Marks-Snelling acknowledged moderate effusion in the left knee, crepitance in both patella upon movement, tenderness to palpation of the left shoulder, mild muscle wasting of the deltoid, fair range of motion in the shoulder, subnormal knee flexion, left shoulder abduction in supination, an obvious limp in the left leg, and weakness in heel walking.  *Id.* at pp. 335-36.  The Plaintiff's claim is based on the premise that this collection of medical evidence is significantly probative of additional limitations on Ms. Prandy's ability to walk, stand, and reach.  Plaintiff's Brief at pp. 12, 14.  There is no

support in the record for this correlation, and it appears to conflict with Dr. Marks-Snelling's assessment of the medical evidence.

In her brief, the Plaintiff appears to assume a correlation between the medical data and her asserted limitations in standing, walking, and reaching.  But there is no medical evidence of such a correlation.  Indeed, there is substantial medical evidence to support Dr. Marks-Snelling's conclusion that Ms. Prandy could stand, walk, and reach in the manner described by the judge even with the medical data highlighted in the Plaintiff's brief.  The point is illustrated by the scientific data on fluid in the subacromial bursa, difficulty in heel walking, effusion in the knee, and crepitance in the patella of the knee.

According to Ms. Prandy, the judge failed to discuss Dr. Chadwick Webber's finding of a small amount of fluid in the subacromial bursa.  *Id.* at p. 11.  Such fluid may indicate bursitis or a rotator cuff tear.[2]  But, the administrative record does not contain any confirmed diagnoses of bursitis or injury to the rotator cuff.  Indeed, when Dr. Webber noted the fluid in the subacromial bursa, he added that he could not see any "convincing evidence of a labral tear."  R. at pp. 216, 245.  And, there is no mention of bursitis anywhere in the record.  Thus,

---

[2]       *See* A. Gangi, S. Guth, & A. Guermazi, *Imaging in Percutaneous Musculoskeletal Interventions* 182 (2009) (stating that pathologic causes of increased fluid within the subacromial bursa may include multiple conditions, including "full thickness cuff tears"); Philip Robinson, *Essential Radiology for Sports Medicine* 110 (2010) ("Bursal fluid . . . has been shown to correlate with arthroscopic findings of subacromial bursitis" (footnote omitted)); 2 David W. Stoller, *Magnetic Resonance Imaging in Orthopaedics & Sports Medicine* 1245 (3d ed. 2007) ("Low signal intensity within a thickened subacromial bursa on T1- and T2-weightened images indicates a proliferative process in chronic bursitis, also associated with rotator cuff disease." (footnote omitted)); A. Jay Khanna, *MRI for Orthopaedic Surgeons* 107 (2010) ("Subacromial-subdeltoid bursal fluid is associated with a full-thickness rotator cuff tear . . . .").

the presence of a small amount of fluid in the subacromial bursa may not have reflected any pathology.[3]

Ms. Prandy also points to difficulty in heel walking.  Plaintiff's Brief at p. 12.  This activity is ordinarily tested to assess motor strength in the lower extremities.[4]  The unstated premise is that the difficulty in heel walking would suggest substantial motor loss.  However, the Tenth Circuit Court of Appeals has relied on the listings to state that difficulty in heel walking cannot be considered evidence of a "'significant motor loss.'"  *Kruse v. Astrue*, 436 Fed. Appx. 879, 884 (10th Cir. Aug. 19, 2011) (unpublished op.).

In addition, Ms. Prandy refers to effusion in the left knee.  Plaintiff's Brief at p. 12.  The term "effusion" refers to swelling in the knee.  *See Schmidt v. Odell*, 64 F. Supp. 2d 1014, 1026 (D. Kan. 1999) ("Palpable effusion means that there was swelling in the knees that she could feel.").  Ms. Prandy's effusion was graded 1+.  *See* R. at p. 333 (Dr. Alain Le's statement that an "[e]xam of [Ms. Prandy's] left knee revealed a swollen left knee with positive effusion +1").

---

[3]     *See* 2 David W. Stoller, *Magnetic Resonance Imaging in Orthopaedics & Sports Medicine*, 1245 (3d ed. 2007) ("small amounts of subacromial bursal fluid may be seen without abnormal cuff morphology or signal intensity alterations").

[4]     *See* Philip D. Sloane, Lisa M. Slatt, Mark H. Ebell, Louis B. Jacques, & Mindy A. Smith, *Essentials of Family Medicine* 582-83 (5th ed. 2008) (stating that a diagnostic test, involving the patient's walking on heels and toes, is a good screening test for motor strength in the lower extremities).

The significance of this grade requires consideration of the relevant medical literature. This literature indicates that effusion is "graded on a scale of $0 - 4+$."[5]  A 1+ grade reflects the mildest classification of knee instability.[6]  Indeed, two physicians studying knee instability regarded a 1+ grade as "good."[7]  Thus, the medical evidence did not compel the administrative law judge to regard the 1+ grade as significantly probative on Ms. Prandy's ability to stand, walk, or reach.

The Plaintiff also refers to crepitance in the patella of the left knee.  Plaintiff's Brief at p. 12.  For this reference, Ms. Prandy appears to assume that crepitance is indicative of a problem in reaching, standing, or walking.  This assumption may be invalid.  For example, James Cyriax states that "some degree" of "fine crepitus . . . is normal in all middle-aged individuals."  1 James Cyriax, *Orthopaedic Medicine: Diagnosis of Soft Tissue Lesions* 627 (1978).  Another medical source writes that crepitus can be pain-free and "of no significance"

---

[5]     Douglas B. McKeag & James L. Moeller, *ACSM's Primary Care Sports Medicine* 470 (2d ed. 2007).

[6]     Werner Muller states:

> An instability of 5 mm or less is described as a "1+ instability" (mild); between 5 and 10 mm as 2+ (moderate); and 10 mm or more as 3+ (severe). Noesberger (personal communication) uses 3-5 mm as the 1+ range.  This interpretation seems to be more practical, for values of 0-3 mm (relative to the healthy side) are not pathologic in the majority of cases.  An equivocal or borderline result is indicated by (1+).

Werner Muller, *The Knee: Form, Function, and Ligament Reconstruction* 119 (transl. T.C. Telger 1983).

[7]     Jack C. Hughston & Gene R. Barrett, *Acute Anteromedial Rotatory Instability*, 65-A *Journal of Bone & Joint Surgery* 145, 147 (1983).

even when it is coarse.  Robert H. Fitzgerald, Jr., Herbert Kaufer, & Arthur L. Malkani, *Orthopaedics* 10 (2002).  Thus, the judge did not need to regard the evidence of crepitance as significantly probative.

These discussions of fluid in the bursa, difficulty in heel walking, effusion, and crepitance do not appear in the record, and the Court need not draw any definitive conclusions from them.  However, the Plaintiff's medical conclusions are also devoid of support in the record.  From the data that is in the record, Ms. Prandy seems to draw conclusions different than those expressed by Dr. Marks-Snelling.

The Plaintiff's medical opinions may or may not be correct.  At a minimum, however, there is substantial scientific data to question Ms. Prandy's medical conclusions about the evidence not discussed in the decision.[8]  As a result, the Court cannot regard the cited medical data as significantly probative on Ms. Prandy's ability to walk, stand, or reach.  *See supra* p. 6.  In these circumstances, the Court should reject the Plaintiff's arguments involving selectivity in the judge's discussion of medical evidence.

Rejection of this argument, in turn, would require rejection of the Plaintiff's argument involving the sufficiency of the evidence.  Dr. Marks-Snelling's assessment provided ample evidentiary support for the administrative law judge's assessment of residual functional

---

[8]     *See Brown v. Barnhart*, 47 Fed. Appx. 864, 866 (10th Cir. Sept. 5, 2002) (unpublished op.) ("We cannot give persuasive authority to an attorney's extrapolation of a medical article to his client's condition." (citation omitted)); *see also Watson v. Barnhart*, 194 Fed. Appx. 526, 530 (10th Cir. Sept. 6, 2006) (unpublished op.) ("a claimant's interpretation of [a medical journal article] is not recognized as impairment evidence" (citation omitted)).

capacity.[9]  The additional medical references, relied upon by Ms. Prandy, would not have compelled the judge to arrive at a different assessment.

## VI.      RECOMMENDED RULING

The Court should affirm the decision of the Social Security Administration.

## VII.      NOTICE OF THE RIGHT TO OBJECT

Any party may file written objections with the Clerk of the United States District Court, Western District of Oklahoma.  *See* 28 U.S.C.A. § 636(b)(1) (2011 supp.).  The deadline for objections is September 4, 2012.  *See* Fed. R. Civ. P. 6(a)(1)(C), 6(a)(6)(A), 6(d), 72(b)(2).  The failure to file timely objections would result in waiver of the right to appeal the suggested ruling.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## VIII.      STATUS OF THE REFERRAL

The referral is discharged.

Entered this 15th day of August, 2012.

Robert E. Bacharach
United States Magistrate Judge

---

[9]      *See, e.g.*, *Leach v. Astrue*, 470 Fed. Appx. 701, 704 (10th Cir. Jan. 11, 2012) (unpublished op.) (holding that the administrative law judge's finding on residual functional capacity was supported by substantial evidence consisting of an agency doctor's evaluation).